(June 9, 2017)

■ NCA Comp, Inc., as Administrator of Contractors Self-Insurance Trust Fund, Appellant, v 1289 Clifford Ave., Doing Business as Empire Heating & Air Conditioning, et al., Defendants, and Babcock Utilities, Inc., et al., Respondents. (Appeal No. 1.) [56 NYS3d 665]—

Appeal from an order of the Supreme Court, Erie County (Timothy J. Walker, A.J.), entered August 6, 2015. The order granted the motion of defendants Babcock Utilities, Inc., Mark Cerrone, Inc., and Jo to Moe, Corp. to dismiss plaintiff's complaint against them.

It is hereby ordered that the order so appealed from is unanimously reversed on the law without costs, the motion is denied and the complaint against defendants Babcock Utilities, Inc., Mark Cerrone, Inc. and Jo to Moe, Corp. is reinstated.

Memorandum: Plaintiff, the administrator of a group self-insurance trust (GSIT) created pursuant to Workers' Compensation Law § 50 (3-a), commenced this action seeking to collect assessments made against, inter alia, defendants-respondents in appeal Nos. 1 and 2 (hereafter, defendants) calculated upon the fiscal years in which defendants participated in the GSIT. In appeal No. 1, plaintiff appeals from an order that granted the pre-answer motion of defendants Babcock Utilities, Inc., Mark Cerrone, Inc. and Jo to Moe, Corp. pursuant to CPLR 3211 (a) (1), (5) and (7) to dismiss the complaint against them. In appeal No. 2, plaintiff appeals from an order that granted the pre-answer motion of defendant Memminger's Painting, Inc. and the cross motion of defendant Historicon, Inc., both pursuant to CPLR 3211 (a) (1), (5) and (7), seeking dismissal of the complaint against them. Based upon its interpretation of the language of the GSIT agreement, Supreme Court concluded that the assessments at issue were "invalid." We reverse both orders.

"Under CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Leon v Martinez*, 84 NY2d 83, 88 [1994]). For the reasons that follow, we agree with plaintiff that the documentary evidence submitted by defendants does not conclusively establish, as a matter of law, that defendants have no contractual liability to pay the

assessments at issue. We begin by observing that, contrary to the contention of defendants, our determination in *Metal Goods & Mfrs. Ins. Trust Fund v Advent Tool & Mold, Inc.* (61 AD3d 1412 [2009]) is not dispositive of the issues in these appeals for the simple reasons that *Metal Goods* arose not in the CPLR 3211 context, but rather in the CPLR 3212 summary judgment context, and the language of the GSIT agreement in *Metal Goods* with respect to how under-funding would be addressed differs substantially and substantively from the GSIT agreement herein. Among other differences, the GSIT in *Metal Goods* only provided for a prospective "rate increase," while the GSIT here provides for an assessment based upon the fiscal years in which a defendant participated, regardless of whether a defendant is actually participating at the time the assessment is made.

In terms of additional factual background with respect to the instant matter, the record establishes that in 1998 defendants and other contractors that were involved in the construction industry and subject to the Workers' Compensation Law with respect to their employees established the GSIT in order to comply with the law and provide workers' compensation benefits to their employees. Thereafter, all defendants made contributions and participated in the GSIT for varying periods of time, and there is no dispute that, by the end of the 2009 fiscal year, all defendants had ceased making contributions to the GSIT.

In 2011, the GSIT ceased all new or prospective workers' compensation coverage operations because it was underfunded and lacked a sufficient income stream to continue operations. Recognizing the precarious financial condition of the GSIT, in March 2014 the trustees ultimately resolved to purchase an "Assumption of Workers' Compensation Policy" (ALP), which would relieve the GSIT and all contractors of any liability for existing claims and continuing benefit obligations. Those liabilities would be shifted to the insurance carrier issuing the ALP upon payment of the agreed premium. The problem for the GSIT, however, was that it did not have sufficient funds on hand to pay the full ALP premium. Thus, in July 2014, the GSIT issued "assessments" to defendants and other contractors in order to raise the additional funds necessary to pay the one-time ALP premium. Defendants refused to pay the assessments, and this litigation ensued.

Article IV, section 4.10 of the 1998 version of the GSIT, entitled "Power To Assess Employers," states in pertinent part that, "[i]n the event that unreserved assets of the Trust are

insufficient to meet the obligations of the Trust, the Trustees shall forthwith prepare and implement a plan to require an additional payment by the Employers in the form of an assessment which shall be sufficient to make up any deficiency as determined by the Trustees at that time." In addition, it provides that "[e]ach Employer who participates in the Trust hereby agrees to pay such assessments to the Trust on Demand regardless of whether or not they are a participant in the Trust at the time the assessment is made."

Importantly, the assessment at issue for each defendant was calculated, in accordance with section 4.11 of the GSIT, only upon the fiscal years in which each contractor actually made contributions to the GSIT.

There is no dispute that the GSIT made payment of short-term benefits to defendants' employees and, at least theoretically on this record, incurred long-term workers' compensation liabilities in the form of continuing medical benefits and wage benefits to employees with permanent disabilities and/or ongoing medical costs lasting well beyond the fiscal years in which defendants made contributions. Those potential long-term liabilities for benefits to defendants' injured employees appear to be the reason for the inclusion of the assessment clause in the GSIT. Without that clause, a contractor could have multiple employees permanently injured and disabled during the period in which it made contributions, and then walk away from any future obligation to assist in the funding of those liabilities if the GSIT became underfunded, simply by ceasing to make contributions.

In 2009, the trustees amended Article I, Definitions, of the GSIT to include section 1.1(A), which defines the terms active member and inactive member as follows: "Active Member shall mean an employer currently participating in the Trust Fund. Inactive Member shall mean an employer no longer participating in the Trust Fund." In addition, section 4.10, now entitled "Power to Assess Active and Inactive Members," was amended to read as follows: "In the event that assets of the Trust are insufficient to meet the obligations of the Trust, the Trustees shall forthwith prepare and implement a plan to require an additional payment by the Active and Inactive Members in the form of an assessment which shall be sufficient to make up any deficiency as determined by the Trustees at that time. The formula and method of assessment shall be that described in Section 4.11 below. Each Employer who participates in the Trust hereby agrees to pay such assessment to the Trust on Demand regardless of whether or not they are an Active or

Inactive Member of the Trust at the time the assessment is made."

Although the language of section 4.11 was also amended in 2009, it did not alter the assessment formula in a significant manner.

Contrary to defendants' contention, we agree with plaintiff that defendants are bound by the amendments to the GSIT agreement made by the trustees in 2009, and thus the court erred in determining that the assessments are invalid. The original GSIT agreement executed in 1998 contained a clause that provided that the GSIT agreement could "be amended in any respect not specifically prohibited in this instrument, from time to time by a majority of all the Trustees serving at that time," which is what transpired here in 2009. Defendants do not contend that the amendments at issue are specifically prohibited by any other provision in the GSIT.

In any event, even assuming, arguendo, that defendants are not subject to the 2009 amendments, we conclude that the assessments at issue were authorized under section 4.10 of the 1998 version of the GSIT.

Defendants contend that they ceased to be "employers" under the GSIT when they stopped making contributions. According to defendants, because each of them was no longer an "employer" at the time of the assessments, they are not subject to the assessments under the language of the GSIT. We reject that contention. The term "employer" in the GSIT is simply a descriptive label or title assigned to certain parties to the agreement, i.e., contractors or those engaged in the business of supporting the construction industry that had employees to be covered under the GSIT, rather than a title that is determinative of a contractor's rights and obligations under the GSIT at any particular moment in time. In other words, the term "employer" has no legal significance under the plain language of the GSIT other than to provide a descriptive label for the parties to the GSIT that were to make contributions and provide workers' compensation benefits to their employees under the trust agreement.

Moreover, the language of the GSIT in *Metal Goods* specifically provided that "[a]n Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he [or she] is no longer obligated to make contributions to the Trust Fund or has ceased to qualify as an Employer hereunder due to failure to make the required contributions or [in] any way ceases to qualify as an eligible Employer" (*Metal Goods*, 19 Misc 3d 608, 615 [2008], *affd* 61

AD3d 1412 [2009]). Here, the 1998 version of the GSIT does not terminate "Employer" status under any clause. Rather, pursuant to sections 6.2 and 6.3 of Article VI, which is entitled "Participation of Employers in the Trust," an "Employer" shall "cease to be a *participating* Employer" when it fails to make contributions, but it is still an "Employer" and subject to reinstatement upon application and approval (emphasis added).

We likewise conclude, for the same reasons, that the 2009 amended version of the GSIT validly authorizes the assessments against defendants.

We further agree with plaintiff that the complaint states a valid cause of action against defendants based upon breach of a contract (*see* CPLR 3211 [a] [7]). The pleading specifies the terms of the agreement, the consideration, the performance by plaintiff and the basis of the alleged breach of the agreement by defendants. In the procedural posture in which this case comes before this Court, we accept as true, as we must, every allegation of the complaint (*see 219 Broadway Corp. v Alexander's, Inc.*, 46 NY2d 506, 509 [1979]), and conclude that it is legally sufficient.

We have considered defendants' remaining contentions and conclude that they are without merit. Present—Centra, J.P., Peradotto, Carni and Lindley, JJ.